## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**SECRETARY OF LABOR,**

     **Plaintiff,**

                             **Case No. 1:17-cv-541**

     **v.**                         **JUDGE DOUGLAS R. COLE**

**MACY'S, INC., et al.,**

     **Defendants.**

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Secretary of Labor's (the "Secretary") Motion for Reconsideration (the "Motion") (Doc. 52). For the reasons discussed below, the Court **DENIES** the Motion.

## BACKGROUND[1]

This is an ERISA action. On August 16, 2017, the Secretary sued Macy's, Inc. and the Macy's, Inc. Welfare Benefits Plan (together "Macy's," except where addressed separately), along with two third-party administrators of the benefits plan. (*See* Compl., Doc. 1). Two weeks later, the Secretary filed his Amended Complaint (Doc. 4), the currently operative complaint. The allegations at issue here concern Macy's Tobacco Surcharge Wellness Program (TSWP), which is an aspect of the benefits plan. Under the terms of the TWSP, employees who used tobacco products were required to pay a surcharge (the "tobacco surcharge") for their health benefits

---

[1] The Court has extensively summarized the factual allegations and procedural background of this case in its previous Opinion (Doc. 47). The factual background discussion here is thus limited to the relatively narrow issue before the Court now.

under the plan. In relevant part, the Amended Complaint alleges that, during Health Plan Years 2011–2013, Macy's failed to include a reasonable alternative standard for employees who could not meet the primary requirements to avoid the tobacco surcharge (for example, by being tobacco-free). (*See* Am. Compl., Doc. 4, #65). According to the Amended Complaint, the lack of such an alternative meant that Macy's operated a discriminatory wellness program, which violates 29 U.S.C. § 1182 and the applicable implementing regulation 29 C.F.R. § 2590.702(f)(2). (*See id.*). Relatedly, and more importantly for present purposes, the Secretary also alleged that Macy's breached its fiduciary duties under 29 U.S.C. § 1104(a)(1)(D), along with other provisions not at issue here.[2] Macy's moved to dismiss (*see* Doc. 37) the Amended Complaint (Doc. 4) on October 1, 2018. (Other defendants likewise moved to dismiss, but those defendants are not relevant to the issues addressed in this Opinion.)

On November 17, 2021, the Court issued its Opinion and Order (the "Opinion" or "Court's Opinion") (Doc. 47) on the motions to dismiss. As relevant here, the Court denied Macy's Motion to Dismiss (Doc. 37) in part. In particular, the Court concluded that the Secretary had alleged a plausible claim that the TSWP violated ERISA's statutory and regulatory requirements for wellness programs for Plan Years 2011–2013. (*See* Op., Doc. 47, #479, 485). But the Court granted Macy's Motion to Dismiss with respect to the claims for breach of fiduciary duty in connection with the TSWP

---

[2] The Secretary's Amended Complaint originally also included claims for breach of ERISA's fiduciary duty of loyalty, 29 U.S.C. § 1104(a)(1)(A)(i), and for prohibited transactions by a fiduciary, 29 U.S.C. § 1106. (*See, e.g.*, Am. Compl, Doc. 4, #65–66). The Secretary's Motion for Reconsideration does not ask the Court to alter or amend its judgment as to those other fiduciary claims. (*See* Op., Doc. 47, #491 (dismissing with prejudice all claims for breach of fiduciary duty in connection with the TSWP for Plan Years 2011–2013)).

for those same plan years. (*See id*. at #488–91). More specifically, the Court concluded that, under applicable Supreme Court precedent, Macy's had acted in its capacity as a *settlor* rather than as a fiduciary when it created the allegedly-offending terms of the TSWP, and thus its act of creating those terms could not violate a fiduciary duty. (*Id*. at #488–90). The Court also rejected the Secretary's argument that Macy's could face fiduciary liability for its "implementation" of the allegedly discriminatory TSWP. In particular, the Court concluded that the Secretary's allegations were not directed at any discretionary conduct that Macy's undertook in implementing the TSWP. Rather, the Secretary alleged only that Macy's administered the TSWP as its terms required—terms that the Secretary claims are impermissibly discriminatory. (*Id*. at #490–91).

On December 15, 2021, the Secretary filed a Motion for Reconsideration (Doc. 52) asking the Court to revisit its dismissal of the claims under § 1104(a)(1)(D) for breach of fiduciary duty relating to the TSWP during Plan Years 2011–2013. The Secretary argues that the Court's decision as to those claims reflects a clear error of law. Macy's filed a Response in Opposition (Doc. 53) on January 5, 2022, and the Secretary filed a Reply in Support (Doc. 55) on January 20, 2022. The Court heard telephonic argument on the motions on January 27, 2022. The matter is now fully briefed and before the Court.

## LEGAL STANDARD

The Secretary seeks relief under Federal Rule of Civil Procedure 59(e), which allows a "Motion to Alter or Amend a Judgment." Because such requests for do-overs

impact scarce judicial resources and undercut the finality of judgments, they are disfavored. Accordingly, a party seeking such relief must satisfy a higher standard than would apply on the party's first go-around. Generally, the party must show "(1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *See Duggan v. Towne Properties Grp. Health Plan*, Case No. 1:15-cv-623, 2019 WL 1439936, at *2 (S.D. Ohio Mar. 31, 2019) (citation omitted). A court makes a clear error of law under "unique circumstances," such as a "complete failure to address an issue or claim," *Byrd v. Gwin*, No. 2:17-cv-981, 2019 WL 3804525, at *1 (S.D. Ohio Aug. 13, 2019) (citation omitted), or where the court either "'overlooked or disregarded' some 'argument or controlling authority' or where the moving party 'successfully points out a manifest error.'" *Myers v. Am. Educ. Servs.,* Case No. 1:18-cv-144, 2021 WL 4381315, at *3 (S.D. Ohio Sept. 24, 2021) (citation omitted). "A party should not use a motion for reconsideration as a vehicle to re-hash old arguments that could have been argued previously." *Gaiser v. Am.'s Floor Source*, Case No. 2:18-cv-1071, 2020 WL 1233770, at *1 (S.D. Ohio Mar. 13, 2020) (citation omitted). Nor should a party use such motions as a vehicle to raise case law that the party could have raised, but elected not to, in connection with its earlier briefing.

Because the Secretary is asking the Court to alter or amend its Opinion concerning Macy's Motion to Dismiss (Doc. 37), the legal standards that apply to such motions are also relevant here. As the Court noted in its previous Opinion, at the motion to dismiss stage, a complaint must "state[] a claim for relief that is plausible,

4

when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [plaintiffs] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted). In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is so, however, only as to factual allegations. The Court need not accept as true a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## LAW AND ANALYSIS

The Secretary's request for reconsideration suffers from two related defects, one procedural and one substantive. As to the former, a motion to alter or amend the judgment is not a vehicle for a party to bring to the Court's attention cases that the party wishes it had cited, but that it did not, in connection with its original motion. Yet that is, at least in part, what the Secretary seeks to do here. More specifically, in arguing that the Court committed a "clear error of law" in dismissing the Secretary's claims against Macy's for breach of fiduciary duty in connection with the 2011–13 Plan Years, the Secretary relies heavily on (1) rehashing arguments already pressed, and (2) pressing case law that existed at the time the Secretary filed his original brief

5

in opposition to the motion to dismiss, but that he chose not to offer the Court in connection with that briefing. That is a problem.

The Court will not belabor that point, though, as the Secretary's arguments also fall short in terms of substance. That is, even given these additional cases, and the arguments that the Secretary advances based on them, the Court concludes that it did not commit "clear error" in dismissing the fiduciary duty claims associated with the TWSP in the 2011–13 Plan Years.

As the Supreme Court has explained, "[i]n every case charging breach of ERISA fiduciary duty … the threshold question is … whether [the defendant] was acting as a fiduciary … when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). This question arises because ERISA adopts fiduciary duties from the common law of trusts and transplants them to the context of benefits provided by an employer who also, naturally, "may have financial interests adverse to beneficiaries." *Id.* at 225. Thus, the fact that employers sometimes act as fiduciaries with respect to employee benefits does not prevent them from also "tak[ing] actions to the disadvantage of employee beneficiaries, when they act as … plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Id.* When the employer alters the terms of a plan, for example, the employer is acting as a settlor rather than a fiduciary. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Accordingly, fiduciary duties simply do not attach in that setting. After all, ERISA normally does not require the employer to provide particular benefits, nor does it ordinarily prevent the employer from changing the benefits it

6

provides, including in ways that are detrimental to employees. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

As a given party can wear different hats (i.e., either settlor of fiduciary) at different times, the key question is the capacity in which the party was acting with respect to the challenged conduct. And in considering that conduct, a person acts as a fiduciary "to the extent … he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets …, or … he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii).

In its Opinion, the Court concluded that the allegedly violative conduct that Macy's engaged in here consisted of creating the terms of the TWSP, terms that the Secretary contends are discriminatory in light of the failure to include a reasonable alternative standard. But drafting plan terms is a settlor function. Thus, the Court concluded that this conduct could not give rise to a breach of fiduciary duty claim.

The Secretary contended, however, and now re-contends, that he plausibly alleged that Macy's breached a fiduciary duty in violation of 29 U.S.C. § 1104(a)(1)(D) when it "implemented" the violative TSWP. The particular conduct to which he points consists of acts such as

> determining which participants were charged the Tobacco Surcharge; determining which participants (if any) were reimbursed the Tobacco Surcharge; withholding the Tobacco Surcharge from participants' paychecks; selecting [Cigna] and [Anthem] as the service providers to provide tobacco cessation programs; and directing Cigna and Anthem on how to report completions of the tobacco cessation programs.

(Mot. for Reconsideration ("Mot."), Doc. 52, #534). According to the Secretary, such conduct shows both that Macy's acted in a fiduciary capacity, and that it breached a fiduciary duty.

To expand on that a bit, the Secretary claims Macy's was acting as a fiduciary when it performed these acts because it was exercising discretionary authority over the management and administration of the plan and its assets, in satisfaction of the statutory definition of fiduciary action. (*See id*. at #532 (citing 29 U.S.C. § 1002(21)(a)(i), (iii))). Second, and relatedly, the Secretary contends that Macy's acts of implementation violated § 1104(a)(1)(D), which provides that "a fiduciary shall discharge his duties with respect to a plan … in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of* [ERISA's Subchapter I …]." 29 U.S.C. § 1104(a)(1)(D) ((cited in Mot., Doc. 52, #538 (emphasis in original))).

The problem for the Secretary is that, because the definition of a fiduciary is functional, the acts that Macy's allegedly undertook in a fiduciary capacity must be the same acts out of which the claim for breach of fiduciary duty arises. *See Pegram*, 530 U.S. at 226 ("the threshold question is … whether [the defendant] was acting as a fiduciary … *when taking the action subject to complaint*") (emphasis added). But here, as Macy's points out, there is an apparent mismatch between the various acts of TSWP implementation that the Secretary argues Macy's undertook in a fiduciary capacity and the Secretary's core factual allegation relating to the ERISA wrongdoing—that the TSWP's terms failed to include a reasonable alternative

8

standard in violation of ERISA. (*See* Resp. in Opp'n to Mot. ("Opp'n"), Doc. 53, #548 ("The flaw in the Secretary's argument is that even if the Secretary were correct that Macy's acted in some respects as a fiduciary, none of the alleged fiduciary functions have any relationship at all to the failure to provide a reasonable alternative.")).

Take for example the Secretary's allegation that Macy's "select[ed] [Cigna] and [Anthem] as the service providers to provide tobacco cessation programs." (Mot., Doc. 52, #534). So what? Even assuming that Macy's exercised discretion in making this selection, how does the selection of these two third-party administrators in any way relate to the claimed violation here? Indeed, when asked that question during argument, the Secretary conceded that no such relationship existed. But that is the point. It is not enough to allege conduct that may be discretionary. Rather, the Secretary must allege discretionary conduct *that is part of the alleged violation*. Here, the sole alleged shortcoming is the failure to include a reasonable alternative standard, and the Secretary offers no more than conclusory allegations that the absence of such a standard in the TSWP's terms resulted from any discretionary decision pursuant to plan documents by Macy's. (*See id.* at #547 ("Plaintiff never specifically provides a basis for how Macy's exercised discretionary authority or responsibility in administering the TSWP with respect to the reasonable alternative.")).

Perhaps sensing this difficulty, the Secretary works backward from his theory of how Macy's breached a fiduciary duty to the conclusion that Macy's acted in a fiduciary capacity when it implemented a wellness program that lacked a reasonable

alternative standard, even though the absence of that reasonable alternative standard merely followed from the terms of the plan Macy's adopted. To get there, the Secretary starts with the language of § 1104(a)(1)(D), which requires fiduciaries to follow plan terms "insofar as such [terms] are consistent with the provisions of [ERISA]." From that language, the Secretary posits a corollary—fiduciaries have a "duty to *disregard illegal plan terms*." (*Id.* at #539 (emphasis added)). Because the Secretary has adequately alleged that the Macy's, Inc. Welfare Benefits Plan has one or more terms that violate an ERISA provision (i.e., has "illegal plan terms"), the Secretary then relies on that corollary to conclude that Macy's, Inc., necessarily violated its fiduciary duties by following that unlawful plan. Stated slightly differently, the Secretary contends that "ERISA fiduciaries always have the discretion to disregard illegal plan terms," and thus they are in fact acting in a fiduciary capacity whenever they fail to do so. (Reply in Supp. of Mot. ("Reply"), Doc. 55, #576).[3]

---

[3] At this point, the Court notes that the Secretary's presentation of this theory of breach of fiduciary duty in his original briefing on Macy's Motion to Dismiss (Doc. 37) was sketchy at best, consisting largely of broad conclusory statements with limited citation to legal support. (*See generally* Resp. in Opp'n to Macy's Mot. to Dismiss ("Sec'y Opp'n"), Doc. 41, #361–64). On the other hand, the Secretary now cites an array of case law that he claims supports this same theory, all of which would have been available to the Secretary the first time around. (*See, e.g.*, Mot., Doc. 52, #539). Thus, the Court has some concern that the Secretary is inappropriately using a motion to alter or amend the judgment "as a vehicle to re-hash old arguments that could have been argued previously." *See Gaiser*, 2020 WL 1233770, at *1. Nevertheless, the Court acknowledges the complexity and apparent novelty of this case in certain respects, and prefers to decide the merits of the Secretary's theory of breach, in part to provide clarity as the Secretary prepares to submit his Second Amended Complaint. (*See* 12/13/21 Notation Order).

The Court is not convinced. To start, the Secretary's interpretation of § 1104(a)(1)(D) rests on a logical fallacy. By its plain language, that statutory provision imposes a fiduciary duty *to follow* plan documents that *are* consistent with ERISA. But from that, the Secretary asks the Court to infer a fiduciary duty *not to follow* plan documents that *are not* consistent with ERISA. As a matter of logic, the latter simply does not follow from the former. Indeed, the fallacy even has a name— "denying the antecedent" or "the fallacy of the inverse." Thus, from the outset, the Secretary's theory of violation of § 1104(a)(1)(D) appears to suffer from the fatal flaw that the plain text of the statute does not support it. *See, e.g., United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021) ("The plain language of a statute is the starting point for its interpretation … [and] should also be the ending point if the plain meaning of that language is clear.") (citations and internal quotation marks omitted).

Perhaps not surprisingly, then, the Secretary does not fare much better with case law. Although the Secretary insists that the Court committed a clear error of law in dismissing his claims for breach of fiduciary duty based on the TSWP for Plan years 2011–2013 under § 1104(a)(1)(D), the Secretary does not point to any controlling (Supreme Court or Sixth Circuit) precedent that adopts either the Secretary's interpretation of § 1104(a)(1)(D) or the Secretary's theory of breach of fiduciary duty based solely on implementation of plan terms that violate another provision of ERISA.[4] Indeed, so far as the Court can tell, only a few out-of-circuit

---

[4] The Court discusses the case law the Secretary does cite in more detail below.

district court cases have addressed claims for breach of fiduciary duty under
§ 1104(a)(1)(D) based solely on allegations that a party implemented a plan whose
terms allegedly violated another provision of ERISA. And the weight of that
persuasive authority *rejects* the Secretary's arguments.

For example, in *Cement and Concrete Workers District Council Pension Fund
v. Ulico Casualty Company*, 387 F. Supp. 2d 175 (E.D.N.Y. 2005), the trustees of a
pension plan amended the plan in a manner that the plaintiffs argued violated
ERISA's "minimum benefit accrual standards," set forth in 29 U.S.C. § 1054. *Ulico*,
387 F. Supp. 2d at 179. More importantly for present purposes, though, the plaintiffs
there also separately argued that implementing that plan according to those allegedly
violative terms violated a fiduciary duty under § 1104(a)(1)(D). *See id.* at 182.

The *Ulico* court disagreed. The court started by observing that "the inquiry
into whether a plan trustee has breached a fiduciary duty must be squarely directed
at determining whether any of the trustees' actions or omissions in managing and
administering the plan breached an ERISA fiduciary duty, rather than on whether
the terms of the plan administered by the trustee violated ERISA in some respect."
*Id.* at 185. Next, the court addressed, and roundly rejected, the very interpretation of
§ 1104(a)(1)(D) that the Secretary advances here:

> The proposition that "a trustee who administers a pension plan knowing
> it to be in violation of ERISA acts in violation of his fiduciary duties
> under ERISA," while perhaps facially attractive, is based on an overly
> broad reading of [29 U.S.C. § 1104(a)], and comes to this court
> conspicuously unsupported by caselaw. … [Section 1104(a)] provides, in
> relevant part, that "a fiduciary shall discharge his duties with respect to
> a plan solely in the interest of the participants and beneficiaries and …
> in accordance with the documents and instruments governing the plan

insofar as such documents and instruments are consistent with the provisions of [ERISA]." … The plain meaning of this provision is that if the terms of the plan documents and instruments are consistent with ERISA, a plan trustee has a fiduciary duty to adhere to those terms. … And as elementary logic teaches, the contrapositive of this statement is equally true: a plan trustee does not have a fiduciary duty to comply with any term of the plan documents which is not consistent with ERISA's requirements. … *However, the plaintiffs' proposed construction of this statutory provision—that a plan trustee owes a fiduciary duty to depart from any provision of the plan documents which he knows to violate ERISA and/or to amend that provision—goes significantly beyond the plain command of the statute.* It therefore comes as no surprise that the plaintiffs are unable to identify a single case holding that a plan trustee necessarily breaches a fiduciary obligation by complying with any provision of the plan which he knows to violate ERISA.

*Id.* (emphasis added) (internal citations omitted). Accordingly, the *Ulico* court concluded that "[t]rustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions." *Id.* at 184. Several other district courts have cited this holding approvingly. *See Laurent v. PricewaterhouseCoopers LLP*, 06-CV-2280, 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018) ("The Court disagrees with the notion that ERISA imposes a general fiduciary duty on a plan administrator to comply with each and every provision in the statute."); *Roe v. Empire Blue Cross Blue Shield*, No. 12-cv-04788 (NSR), 2014 WL 1760343, at *8 (S.D.N.Y. May 1, 2014); *Agway, Inc., Employees' 401(k) Thrift Inv. Plan v. Magnuson*, Civil Action No. 5:03-CV-1060 (HGM/DEP), 2006 WL 2934391, at *10–11 (N.D.N.Y. Oct. 12, 2006).

Similarly, in *Paul v. RBC Capital Markets LLC*, No. C16-5616 RBL, 2018 WL 3630290 (W.D. Wash. July 31, 2018), the court dismissed a claim for breach of fiduciary duty based on implementation of a retirement plan whose terms allegedly

violated certain substantive provisions of ERISA. The court rejected an argument strikingly similar to the Secretary's here:

> [p]laintiffs argue that "administering" and "managing" a plan, and disposition of "plan assets" in violation of ERISA … implicate fiduciary conduct. … Even construing "fiduciary duties" liberally, … in the absence of some articulable conduct that violates a fiduciary duty, *correctly enforcing a flawed plan does not support a breach of fiduciary duty claim as a matter of law*.

*Id.* at *7 (emphasis added) (internal citations omitted).

On the other hand, the Court notes that there is one, also out-of-circuit, case (to the Court's knowledge the only one) that arguably comes out differently. In *Pender v. Bank of America*, 756 F. Supp. 2d 694 (W.D.N.C. 2010),[5] the defendants sought dismissal of the plaintiffs' claims for breach of fiduciary duty based on another alleged ERISA violation, this time involving calculation of lump-sum retirement benefits under 29 U.S.C. § 1053 *et seq. Id.* at 704. The *Pender* court acknowledged *Ulico*, but purported to distinguish it, with limited discussion, as follows: "*Ulico* simply states that a Plan fiduciary does not *necessarily* breach his duty by complying with a plan provision that he knows violates ERISA. … Here, however, the Plans' fiduciaries might have breached their duties because implementing the transfers deprived participants of an important protection under ERISA—the separate account feature." *Id.* (internal citations omitted). So *Pender* could be read to suggest that some, but not all, implementations of plan terms that violate ERISA may constitute a breach of fiduciary duty for that reason. However, it is not entirely clear whether the *Pender*

---

[5] Notably, the Secretary never cited *Pender* anywhere in either his original Response (Doc. 41) to Macy's Motion to Dismiss (Doc. 37), nor in his briefing regarding the instant Motion (Doc. 52).

court adopted a theory of breach of fiduciary duty based on § 1104(a)(1)(D), like the Secretary's, or instead based on §§ 1104(a)(1)(A) or (B), which claims were also present in *Pender*, but are not at issue here. *See Pender*, 756 F. Supp. 2d at 704. Also unclear is how the *Pender* court determined that the question turns on whether the act at issue "deprived participants of an important protection under ERISA," and the *Pender* court offers no general guidance on where to draw this particular line of "importance." *See id.*

Putting *Pender* aside, the weight of applicable case law—while limited, *see Paul*, 2018 WL 3630290, at *6 (noting "there is not a lot of on point authority either way")—supports the Court's previous dismissal of the Secretary's claims for breach of fiduciary duty under § 1104(a)(1)(D) based on Macy's implementation of the TSWP in Plan Years 2011–2013. As in *Ulico* and *Paul*, the Secretary's relevant allegations here suggest that Macy's merely "presid[ed] over a plan which fail[ed] in some respect to conform to one of ERISA's myriad provisions," *Ulico*, 387 F. Supp. 2d at 184, and "correctly enforc[ed] a flawed plan," *Paul*, 2018 WL 3630290, at *7. Accordingly, the Court did not commit a clear error of law in concluding that "the Secretary's only apparent allegation about implementation," which was that "Macy's implemented a discriminatory wellness program *in accordance with* the impermissibly discriminatory terms it established when it created the program," was insufficient to state a claim for breach of fiduciary duty for Plan Years 2011–2013. (*See* Op., Doc. 47, #490 (emphasis in original)). To the extent that *Pender* might provide some support for a different result, which is not entirely clear, the Court declines to follow *Pender*.

The *Pender* court provides limited explanation for its conclusion on this issue, and the other cases the Court cited above seem to the Court to adopt the more logically sound interpretation of § 1104(a)(1)(D).

While the Secretary did not discuss any of the above cases in his Motion, the Secretary has cited a broad array of other cases from disparate ERISA and even non-ERISA contexts that he claims support his contrary position. Surprisingly, though, so far as the Court can tell, none of those cases decides or even addresses the issue of whether implementation of a plan whose terms violate ERISA also thereby violates § 1104(a)(1)(D), as the cases the Court cited above do. Instead, the Secretary argues at a high level of generality, citing the Court to abstract snippets that sound superficially applicable, but in fact pertain to legal contexts inapposite to the issue before the Court here.

For example, the Secretary argues that the following quotation from a published Sixth Circuit decision requires this Court to accept his arguments concerning the claims at issue here:

> The administrators' authority to disregard unlawful Plan provisions, therefore, can only be derived from their own duty to comply with the law. That duty does not await the filing of administrative claims, but has been there all along. And at no point have the administrators done anything other than apply the methodology set forth in the Plan itself. Thus, as one district court recently observed in rejecting this same argument, "since [the administrators] did not alter the formula, they [must] implicitly conclude that the Plan['s] method of calculation is not illegal."

*Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 442 (6th Cir. 2009) (quoting *Thompson v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc.*, No. 07-1047, 2008 WL 4964714, at *6 (E.D. Wis. Nov. 14, 2008)).

A closer look at *Durand*, though, undercuts the Secretary's reliance on this language. There, the plaintiff alleged that the formula used to calculate her retirement benefits violated certain provisions of ERISA, and the issue before the Sixth Circuit was whether it would be futile to require her to exhaust her administrative remedies by submitting her claim for recalculation before suit. *Durand*, 560 F.3d at 439. The Sixth Circuit considered that there was no such requirement where the claim was not that the plan had incorrectly calculated the benefits, but rather that the plan had correctly calculated the benefits according to an unlawful formula. *See id.* at 439–40. Thus, the Sixth Circuit in *Durand* was not confronted with the issue of whether implementation of plan terms that violate a statute also necessarily breaches a fiduciary duty under § 1104(a)(1)(D), nor, apparently, was a claim for breach of fiduciary duty even at issue in the case. *See Durand v. Hanover Life Ins. Co.*, Civil Action No. 3:07-CV-130-S, 2007 WL 3342370, at *2 (W.D. Ky. Nov. 9, 2007) (noting plaintiff's claims arose under 29 U.S.C. § 1132(a)(1)(B), allowing employees to sue for benefits under the terms of a plan), rev'd on other grounds by *Durand*, 560 F.3d 436.

But even considering the Secretary's selected passage in isolation, nothing about that quote should come as a surprise. The plan administrators had the "authority to disregard unlawful Plan provisions." *Durand*, 560 F.3d at 442.

17

Assuming they were acting in a fiduciary capacity with respect to the relevant conduct, whatever it was—another issue that was not before the Sixth Circuit in *Durand*—that authority follows from § 1104(a)(1)(D), which does not require fiduciaries to follow plan terms that violate ERISA. Naturally, whether acting in a fiduciary capacity or not, the plan administrators also had a "duty to comply with the law." *Id.* Everyone does. Moreover, if they do violate some other ERISA provision, § 1104(a)(1)(D) does not relieve them from liability merely because they were following plan terms. But none of that is the same as saying that implementing terms in a plan that violates ERISA, in and of itself, *also violates* § 1104(a)(1)(D), an issue on which, again, *Durand* has nothing to say.

The Secretary's reliance on Supreme Court cases that he says support his argument similarly comes up short. The Secretary cites *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 420 (2014), for the proposition that § 1104(a)(1)(D) "makes clear that the duty of prudence trumps the instructions of a plan document." But the duty of prudence, § 1104(a)(1)(B), is not at issue in this case. On the other hand, the duty to follow plan documents insofar as they are consistent with ERISA under § 1104(a)(1)(D), which the Secretary insists is at issue here, was not any part of the basis for the plaintiffs' claims in *Dudenhoeffer*. *See id.* at 411–12 (claims arose under § 1104(a)(1)(B), the duty of prudence). Instead, § 1104(a)(1)(D) played only a limited role in *Dudenhoeffer*, as an interpretive aid to resolving the sole issue actually before the Supreme Court, which concerned the proper interpretation of § 1104(a)(1)(B). *See id.* at 420.

But again, to the extent that *Dudenhoeffer* refers to § 1104(a)(1)(D), that reference is consistent with this Court's interpretation of that statutory provision. Because § 1104(a)(1)(D) does not require a fiduciary to follow plan documents that are inconsistent with ERISA, a fiduciary may not use unlawful plan terms as a shield from liability for their violations of *other* ERISA provisions (such as § 1104(a)(1)(B), which imposes a duty of prudence). But as before, that just isn't the same as saying that § 1104(a)(1)(D) *itself imposes* a fiduciary duty to disregard plan terms that violate ERISA, an argument that the Supreme Court did not accept or even consider in *Dudenhoeffer*. In other words, saying that a fiduciary cannot use unlawful plan terms as a shield for *other* violations does not mean that the Secretary can use § 1104(a)(1)(D) as a sword to attack anyone who acts as a fiduciary under a plan in any capacity merely because a plan contains unlawful terms.

Similarly, the Secretary cites *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985), which notes in passing that "trust documents cannot excuse trustees from their duties under ERISA." By now, the Court's response should be apparent. The mere fact that § 1104(a)(1)(D) does not "excuse" a fiduciary from compliance with another provision of ERISA does not mean that § 1104(a)(1)(D) itself *requires* a fiduciary, *as a matter of fiduciary duty,* to disregard plan terms that conflict with ERISA.

And it bears noting that the Court's Opinion (Doc. 47) in no way "excused" Macy's for the alleged violation of § 1182. Indeed, the Court determined that the Secretary's Amended Complaint (Doc. 4) stated a viable claim that Macy's, whether

acting as a fiduciary or not, could face liability for creating a wellness program whose terms did not comply with § 1182 and implementing regulation 29 C.F.R. § 2590.702(f)(2)—assuming, of course, that the Secretary can prove that was the case.[6] (*See* Op., Doc. 47, #473). But none of that is at issue here. Instead, the only question currently before the Court is whether those allegations also state a claim that Macy's violated § 1104(a)(1)(D). *Central States* does not support the Secretary's argument that they do.

The Court will not belabor the point by illustrating the shortcomings of every case that the Secretary cites in support of his arguments in the Motion for Reconsideration. Suffice to say that the Court does not find these cases to demonstrate a "clear error" in the Court's previous Opinion.

To be fair, though, the Secretary does cite a pair of cases that arguably come closer to the mark. While they are out-of-circuit cases (both from the Second Circuit) they might be read to suggest, albeit very much in passing, that § 1104(a)(1)(D) "imposes a general fiduciary duty to comply with ERISA." *See New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015) (citing *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir. 2009)). To the extent that these two cases could be understood to endorse the Secretary's interpretation of § 1104(a)(1)(D), though, they are of minimal persuasiveness. The cases offer no discussion or reasoning to support the reading of § 1104(a)(1)(D) that

---

[6] This differs from the question of what relief would be available against Macy's, and particularly against which of Macy's, Inc., or the Macy's, Inc. Welfare Benefits Plan, should the Secretary prove a violation occurred. The Court returns to that question below.

the Secretary urges here, nor was the interpretive question regarding the scope of that statutory provision necessary, or even relevant, to the issues decided in each of those two cases. *See id.* ("The only question as to these claims is whether United may be held liable under [ERISA civil enforcement provisions] [29 U.S.C. §§ 1132(a)(1)(B) or [1132(a)(3)]."); *Kendall*, 561 F.3d at 120 (issue of standing to pursue claims for breach of fiduciary duty).

Highlighting the point, district courts in the Second Circuit have not adopted the Secretary's interpretation of § 1104(a)(1)(D), nor, apparently, do they interpret *UnitedHealth* or *Kendall* to require them to do so. For example, the Southern District of New York in *Laurent*, 2018 WL 502239, at *3, addressed the issue as follows:

> The Court disagrees with the notion that ERISA imposes a general fiduciary duty on a plan administrator to comply with each and every provision in the statute. First, the *Kendall* quote is taken out of context. *Kendall* is about Article III standing …. In the course of concluding that the plaintiff lacked standing to bring certain ERISA claims, the Second Circuit explained that "[t]he statute does impose a general fiduciary duty to comply with ERISA, but it does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty." The Court does not read *Kendall* to hold that a plan administrator breaches his fiduciary duty whenever he fails to depart from a term of the plan … which conflict [sic] with an ERISA provision.

(citation omitted); *see also Roe,* 2014 WL 1760343, at *8 ("Trustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions ....") (quoting *Ulico*, 387 F. Supp. 2d at 184). It is difficult to conceive how it would be clear error for this Court, which is not in the Second Circuit, to decide the issue before it in a manner consistent with the well-reasoned district court opinions that the Court has discussed at length

above, rather than in accordance with isolated dicta from Second Circuit cases whose holdings did not address the issue presented here.

Finally, although peripheral to the Court's present decision, the Court notes that the legal issue that the Secretary raises may not matter much to the ultimate outcome in this case. Remember, the Court has already determined that the Secretary did state a claim against Macy's for allegedly violating both § 1182 and implementing regulation 29 C.F.R. § 2590.702(f)(2) for Plan Years 2011–2013. (*See* Op., Doc. 47, #473). The Court has also determined that the Secretary has the authority to seek redress for that alleged violation under 29 U.S.C. § 1132(a)(5), which authorizes the Secretary to seek "other appropriate equitable relief … to redress" a violation of ERISA Subchapter 1, which includes § 1182. (*See id.* at #479 n.3). But that same enforcement provision, § 1132(a)(5), is one of the two statutory enforcement provisions (the Court addresses the other one immediately below) on which the Secretary could rely for relief if Macy's in fact had violated a fiduciary duty. Stated alternatively, both § 1104(a)(1)(D) and § 1182 are "provision[s] of this subchapter" under § 1132(a)(5), and are thus equally enforceable under that latter section. Accordingly, to the extent that the Secretary relies on § 1132(a)(5) as the basis for relief, nothing that has happened so far in this case suggests that the scope of relief available to him if he proves that Macy's violated § 1182 would necessarily be any different from the relief available to redress a breach of fiduciary duty under § 1104(a)(1)(D).

True, if the conduct here also constituted a breach of fiduciary duty, the Secretary could perhaps also pursue enforcement under § 1132(a)(2), rather than merely (a)(5). And as the former provision is limited to enforcement of fiduciary duties, it does not apply directly to violations of § 1182. So, if the two enforcement sections give rise to different potential remedies, it may matter whether the § 1182 violation (enforceable under § 1132(a)(5)) is also a breach of fiduciary duty (enforceable under both § 1132(a)(5) and (a)(2)).

But it is not at all clear that the relief available under the two would vary here. To be sure, § 1132(a)(2) allows the Secretary to seek "appropriate relief under [29 U.S.C. § 1109]." The latter section, in turn, requires "[a]ny person who is a fiduciary with respect to a plan who breaches [any fiduciary duty] … to make good to [the] plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary …." 29 U.S.C. § 1109(a). And, given that statutory language, it is conceivable, although by no means certain, that the scope of relief under § 1132(a)(2) may be broader than that available under § 1132(a)(5). This might be true for at least two reasons. First, "appropriate relief" under § 1132(a)(2) might simply be a broader category of potential relief than "appropriate equitable relief" under § 1132(a)(5), for the relatively straightforward (by the standards of this case) reason that the former phrase omits the latter's limitation to "equitable" relief, thereby perhaps, for example, giving rise to an ability to seek monetary damages.

Second, and somewhat relatedly, § 1132(a)(2) might provide a vehicle for holding Macy's, Inc., liable for any losses to the Macy's, Inc. Welfare Benefits Plan as a result of any ultimate liability for the § 1182 violation. That might matter because § 1182, by its terms, imposes a requirement *on the plan*. *See* 29 U.S.C. § 1182(a)(1)(A). If that means that the plan itself is the only entity that faces liability under § 1182 (a topic to which the Court returns below), then it could be that the unavailability of a breach of fiduciary duty claim enforceable through § 1132(a)(2), as an alternative to an ERISA violation enforceable through § 1132(a)(5), would limit the Secretary's ability to seek relief against Macy's, Inc. (as opposed to the Macy's, Inc. Welfare Benefits Plan). Under all those assumptions, the Court's holding that Macy's cannot be liable in a fiduciary capacity for the alleged TSWP violations for Plan Years 2011–2013 might make a difference.

On the other hand, even if the Court had held that, on the allegations here, Macy's, Inc., had breached a fiduciary duty (which, to be clear, the Court did not, and does not, hold), the Court doubts that it would also have determined that the Secretary's Amended Complaint (Doc. 4) alleged "losses to the plan." As the Court noted in its previous Opinion, § 1132(a)(2), which incorporates § 1109, requires "losses to the plan" as a prerequisite for bringing suit. (Op., Doc. 47, #460). And, while the Court did not, and does not, reach the issue of whether the Secretary adequately alleged that Macy's conduct as to the TSWP for Plan Years 2011–2013 led to "losses to the plan," the Court notes that it decided a similar issue in Macy's favor with respect to other claims based on the allegedly improper out-of-network

24

reimbursement methodology. (*See generally id.* at #458–66). Hypothetically, then, had the Court determined that the Secretary stated a claim for breach of fiduciary duty based on implementing the TWSP for Plan Years 2011–13, the Court may well have determined that the Secretary failed to allege losses *to the plan* resulting from that conduct. In that event, a claim under § 1132(a)(2) would not lie, which would again leave § 1132(a)(5) as the sole basis under which the Secretary could seek relief. The bottom line is that, to the extent that § 1132(a)(5) is the sole avenue under which the Secretary can seek relief, whether for a substantive ERISA violation under § 1182 *or* a breach of fiduciary duty, then the Court's holding that he can pursue the former theory, but not the latter, may well have no impact on the scope of relief available to the Secretary in this case.

Nor is it at all clear that the Secretary needs § 1132(a)(2) (rather than the combination of § 1132(a)(5) and § 1182) to reach Macy's, Inc. To be sure, the scope of liability under § 1182 is a thorny issue. As noted above, § 1182 by its terms says that "*a group health plan* … may not" take certain actions that discriminate on the basis of health status, which might mean that the prohibition extends only to the plan itself, and thus is not enforceable (through § 1132(a)(5)) against Macy's, Inc. *See* 29 U.S.C. § 1182(a)(1)(A) (emphasis added). But it could be (again, the Court emphasizes that it has not yet, and does not now, reach this issue) that the statute also applies to any other entity, such as the settlor (i.e., Macy's, Inc.), that *causes* a plan to include a forbidden term, in which case the availability of "appropriate equitable relief … to redress such violation," *see* § 1132(a)(5), might well extend to imposition of such relief

25

against the settlor. On a related front, the implementing regulation, 29 C.F.R. § 2590.702(f)(2), which speaks of "a participatory wellness program," likewise might apply to any defendant that causes a wellness program to have certain discriminatory terms, as the Secretary has alleged Macy's, Inc., has done here. If either of those propositions of law proves true, then dismissing the claim for breach of fiduciary duty against Macy's, Inc., as the Court did in its previous Opinion and declines to change here, would not necessarily limit the Secretary's ability to seek relief against Macy's, Inc., under § 1132(a)(5), for the alleged violation of § 1182 or the implementing regulation.

In short, a high degree of legal (not to mention factual) uncertainty remains at this stage of the case with respect to the claims that the Court's previous Opinion did not dismiss, and the relief to which they may give rise. The Court emphasizes that both Macy's, Inc., and the Macy's, Inc. Welfare Benefits Plan remain defendants in this case. With respect to the TSWP for Plan Years 2011–2013, the only claims against those defendants that the Court has dismissed, in a judgment the Court declines to alter or amend today, are the Secretary's claims for breach of *fiduciary* (as opposed to statutory and regulatory) duty.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Secretary's Motion for Reconsideration (Doc. 52).

**SO ORDERED.**

February 10, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

27